IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

CONTROLBOX.COM, LLC.,
a Michigan limited liability company,

    Plaintiff,

vs.

MICHAEL NICHOLS, an individual, and
NIXCO, LLC, a Missouri limited liability company,
jointly and severally,

    Defendants,

Case no. 14-

Hon.

**Jury Trial Demanded**

---

**MANTESE HONIGMAN ROSSMAN AND WILLIAMSON, P.C.**
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
David Hansma (P71056)
dhansma@manteselaw.com
1361 E. Big Beaver Road
Troy, MI  48083
Telephone:  (248) 457-9200
Facsimile:  (248) 457-9201
www.manteselaw.com
*Attorneys for Plaintiff*

| RECORDS PRESERVATION NOTICE |
|---|
| You, Defendants, are hereby notified to preserve during the pendency of this action all records and documents in all forms and formats (digital, electronic, film, magnetic, optical, print, etc.) that are relevant or may lead to relevant information, and to notify your employees, agents and contractors that they are required to take appropriate action to do the same. |

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, by its attorneys, Mantese Honigman Rossman and Williamson, P.C., and for its Complaint, state as follows:

### GENERAL ALLEGATIONS

**A.**    **The Parties And Jurisdictional Allegations**

1.    As discussed more fully below, this case arises out of Defendants' false statements and tortious interference with Plaintiff's contracts and business expectancies.

2.    Plaintiff Controlbox.com LLC ("Controlbox.com") is a Michigan limited liability company, with its registered address in Oakland County, Michigan.

3. Defendant Michael Nichols ("Nichols") is a Missouri resident with his address in St. Louis, Missouri.

4. Defendant Nixco LLC ("Nixco") is a Missouri corporation with its registered address in St. Louis, Missouri.

5. Plaintiff Controlbox.com resides in this district and a substantial part of the events giving rise to Plaintiff's claims occurred in this District as the tortious communications described herein were directed to Plaintiff and other parties in this District. Accordingly, venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2).

6. Jurisdiction is also proper in this Court, based on diversity of the parties and Plaintiff is entitled to damages in excess of $75,000, exclusive of interest, costs, and attorney fees, as well as various forms of injunctive and equitable relief.

**B.  Background Facts**

7. Plaintiff's majority member and director, Steven McAuley ("McAuley"), formed Controlbox.com in September, 2010 as a technology start-up company.

8. Controlbox.com developed a product to protect sellers from fraud and robocalls plus provide enhanced communication tools through telephone, SMS, email, websites and mobile applications.

9. In middle to late 2010, Controlbox.com was in the process of negotiating with Autotrader.com—an online marketplace for the sale and purchase of new and used motor vehicles— to build a Privacy Shield product for its private seller site users.

10. McAuley personally funded the development of this concept, the development of the technology, and the subsequent and ongoing formation and growth of Controlbox.com.

11. Defendant Nichols was involved in a limited way with the development of the Privacy Shield, prior to the formation of Controlbox.com.

12. However, when Controlbox.com was formed, Nichols did not become a member of the company, nor did he provide any equity capital to the company.

13. Nevertheless, McAuley considered various possibilities and structures for Nichols' ongoing involvement, including as an employee of the company.

14. Nichols, however, demanded 50% of any interest of any business venture that was created from the Privacy Shield project, plus 50% of any other venture McAuley might become involved with in the future. Nichols also demanded a $13,000 base monthly salary before Controlbox.com even had any long term contracts, revenue, or outside financing

15. Because of Nichols' unreasonable demands, he never became a member or employee of Controlbox.com.

16. In late 2010, Controlbox.com secured a term sheet for $750,000 investment in Controlbox.com from Detroit Venture Partners ("DVP"), a new venture capitalist firm based in Detroit, Michigan.

17. On January 18, 2011, Defendant Nichols sent to Controlbox.com's address in Lake Orion, Michigan, a letter in which Nichols claimed ownership of the ideas, inventions, technology and intellectual property associated with Controlbox.com, and alleged an ownership interest in Controlbox.com.

18. Shortly thereafter, Defendants began an intentional process of interfering in Plaintiff's business contracts and expectancies and misrepresenting to third parties Nichols' interests in Controlbox.com and its business and intellectual property.

19. On or around February 2, 2011, Nichols contacted DVP in Detroit and interfered with the planned investment by DVP in Controlbox.com by falsely claiming an interest in Controlbox.com and its business and technology.

20. Nichols stated to DVP that if his demands were not met he would sue Plaintiff and would start a competing venture, presumably through Defendant Nixco.

21. On or around February 5, 2011, Nichols talked with one of the partners of DVP and stated, among other things, that he is a 50% owner of Controlbox.com, that the privacy shield was his idea, and that he had started his own company as a direct competitor to Controlbox.com

22. Defendants knew of Plaintiff's expectancy in the substantial investment from DVP and intentionally interfered with this investment in an effort to force Plaintiff to concede to Defendants' unreasonable demands.

23. DVP and McAuley worked diligently to try to resolve Defendants' demands, but were unsuccessful.

24. As a result, on February 12, 2011, DVP advised Plaintiff that it could not proceed with $750,000 investment "under the current conditions."

25. DVP explained that they wished to continue to work with McAuley and Controlbox.com, but that the threats from Defendants would have to be resolved before they could proceed further. DVP advised McAuley, "As soon as you can get a full release from [Nichols] we would love to move full-steam ahead."

26. DVP's CEO and managing partner also stated to McAuley, "I remain completely excited about ControlBox. Let's keep in close touch and please let me know if I can help in any

way. Hopefully, the Mike thing gets resolved quickly and we can proceed with building a great company together."

27. Over the next several weeks, Plaintiff and its attorneys worked to resolve Nichols' unreasonable demands but were unable to reach a resolution. Accordingly, Plaintiff was unable to move forward with DVP.

28. Plaintiff therefore discontinued negotiations with Nichols and continued to move forward with the business.

29. Controlbox.com went on to build a successful pilot program with Autotrader.com and secured a long term national agreement for the provision of products and services to Autotrader.com.

30. In January, 2012, Controlbox.com secured a term sheet for a $1.1 million investment from Fraser McCombs Capital, LLC ("Fraser McCombs"), a venture capital firm in Boulder, Colorado.

31. Controlbox.com was in the final week of closing on that investment—with an excess of $40,000 of incurred legal fees—when Nichols contacted the venture capital firm and made the same false and outlandish claims about his interests in Controlbox.com that he had made to DVP.

32. Specifically, on or about March 15, 2012, Nichols contacted Fraser McCombs and claimed, among other things, that he was a partner with McAuley and that he was an equity owner in Controlbox.com.

33. Defendants again knew of Plaintiff's expectancy in the substantial investment from Fraser McCombs and intentionally interfered with this investment.

34. Defendants' communications caused Fraser McCombs to withdraw its original term sheet and offer.

35. Over the next several weeks, Plaintiff negotiated with Fraser McCombs for a new term sheet for investment. However, because of Nichols' interference, Plaintiff was unable to complete the deal, leaving Controlbox.com without the investment and with over $40,000 of legal fees.

36. As a direct and proximate result of Defendants' tortious interference described above, Plaintiff was unable to enter into profitable business contracts for capital investments, which otherwise would have been available to it.

37. The loss of these investments has directly and proximately resulted in, among other things, delayed growth for the company, losses of profits, and losses of opportunities for Controlbox.com.

38. At all relevant times, Defendants acted illegally, unethically, and fraudulently, by among other things, making false statements and interfering with Plaintiff's business, and Plaintiff is entitled to exemplary damages.

## COUNT I – INJURIOUS FALSEHOOD

39. Plaintiff realleges and incorporates all allegations as set forth herein.

40. Defendants published to third parties false and disparaging communications regarding Controlbox.com, its members, and the ownership and/or origination of ideas, inventions, technology and intellectual property.

41. The publication of these statements resulted in an interference with economically advantageous relationships which resulted in pecuniary loss to Plaintiff.

42. Defendants intended the publication of their statements to result in harm to the interests of Plaintiff, or recognized or should have recognized that their statements were likely to result in harm to the interests of Plaintiff.

43. Defendants acted with malice in that Defendants knew that their statements were false or acted in disregard of the truth or falsity of their statements.

44. All tortious conduct alleged herein was carried out by Defendant Nichols on behalf of himself and Nixco.

45. Plaintiff is entitled to compensatory and exemplary damages and other losses.

## COUNT II --TORTIOUS INTERFERENCE WITH CONTRACT AND ADVANTAGEOUS BUSINESS EXPECTANCY

46. Plaintiff realleges and incorporates all allegations as set forth herein.

47. Plaintiff was a party to contractual relationships and/or advantageous business relationships and expectancies with various venture capitalist firms.

48. Defendants were not parties to these agreements and business relationships, and they had no right to interfere with them or defeat their purposes.

49. The false and injurious communications and statements made to the venture capitalist firms had the direct and proximate effect of defeating these agreements and business expectancies.

50. Defendants' actions were intentional, malicious, and unjustified in law.

51. As a proximate result of Defendants' actions, Plaintiff has substantial damages.

52. All tortious conduct alleged herein was carried out by Defendant Nichols on behalf of himself and Nixco.

53. Plaintiff is entitled to compensatory and exemplary damages and other losses.

WHEREFORE, as to all counts set forth herein, and as to all Defendants, jointly and severally, Plaintiff requests the following relief:

a. Entry of a Judgment in the appropriate sum.

b. Actual, compensatory, exemplary, incidental, consequential, and any other available damages.

c. An award of all costs and attorney fees sustained by the Plaintiff in bringing this action.

d. An award of pre-judgment and post-judgment interest.

e. All other appropriate equitable and monetary relief.

Respectfully Submitted,

**MANTESE HONIGMAN ROSSMAN AND WILLIAMSON, P.C.**
Attorneys for Plaintiff

By: _____
Gerard V. Mantese (P34424)
David Hansma (P71056)
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200

Dated: March 12, 2014

## JURY DEMAND

Plaintiff hereby demands a trial by Jury.

                      Respectfully Submitted,

                      **MANTESE HONIGMAN ROSSMAN AND WILLIAMSON, P.C.**
                      Attorneys for Plaintiff

By: _____
                      Gerard V. Mantese (P34424)
                      David Hansma (P71056)
                      1361 E. Big Beaver Road
                      Troy, MI 48083
                      (248) 457-9200

Dated: March 12, 2014