IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

CONTROLBOX.COM, LLC.,
a Michigan limited liability company,

       Plaintiff,

vs.

MICHAEL NICHOLS, an individual, and
NIXCO, LLC, a Missouri limited liability company,
jointly and severally,

       Defendants,

Case No. 2:14-cv-11069-PDB-RSW

Hon. Paul D. Borman
Magistrate Judge R. Steven Whalen

---

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

## <u>QUESTIONS PRESENTED</u>

I.      This case is brought by a Michigan company based on claims arising from false and tortious communications published, in part, in Michigan.  Is Michigan an appropriate and convenient venue for litigation of this case?

II.     Plaintiff has alleged that Defendants tortiously interfered with Plaintiff's venture capital funding and committed an injurious falsehood when Defendant Nichols stated that he is an owner of Plaintiff and its business and technology.  Plaintiff has specifically pled that these statements are untrue.  Did Plaintiff state a claim for relief?

III.    Should Defendants' motion to dismiss for failure to add a necessary party be granted where the Defendants did not show that the missing party has any interest in this case or that this Court will be unable to provide complete relief among the parties?

## <u>CONTROLING AND MOST APPROPRIATE AUTHORITY</u>

*Audi AG and Volkswagon of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734 (E.D. Mich. 2004)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Century Business Servs., Inc. v. Bryant,* 69 Fed. Appx. 306 (6th Cir. 2003)

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007)

*In re Packaged Ice Antitrust Litig.*, 723 F.Supp.2d 987 (E.D. Mich. 2010)

*Intellectual Ventures I v. Altera Corp.*, 842 F. Supp. 2d 744 (D. Del. 2012)

*Neshewat v. Salem*, 173 F.3d 357 (6th Cir. 1999)

*Knollenberg v. Ramirez*, 127 Mich. App. 345 (1983)

*Sales v. Marshall*, 873 F.2d 115 (6th Cir. 1989)

*Steen v. Murray*, 919 F. Supp. 2d 993 (D. Iowa 2013)

*United Mobile Tech., LLC v. Pegaso PCS, S.A. de C.V.*, 509 Fed. Appx. 48 (2d Cir. 2013)

## **INTRODUCTION**

Defendant Nichols' motion to dismiss should be denied. In the first place, Michigan is the proper venue for Plaintiff's claims as they are brought on behalf of a Michigan limited liability company based on conduct that occurred, in part, in Michigan. Michigan is therefore a proper venue and Nichols has provided no evidence to show that another district is a more appropriate forum.

Nichols is also incorrect that Plaintiff did not state a claim for relief. The facts alleged plausibly show that Defendants made false claims to ownership of the Plaintiff and its business and technology, and that these claims interfered with Plaintiff's opportunities for venture capital investment. These facts plausibly state claims for relief. Unsurprisingly, Nichols disagrees with the facts as pled. But, the Rule 12(b)(6) standard is not a summary judgment standard, and Plaintiff need not disprove Nichols' position at the pleading stage. *In re Packaged Ice Antitrust Litig.*, 723 F.Supp.2d 987, 1005 (E.D. Mich. 2010). Rather, the question is, whether the complaint, read in the light most favorable to the plaintiff, and accepting its allegations as true, and drawing all reasonable inferences in favor of the plaintiff, states a plausible claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). This standard is amply satisfied.

Finally, Plaintiff did not fail to join a necessary party. Privatis Technology Corporation is not the owner of the claims asserted in this case; the named Plaintiff

is.  Nichols has presented no evidence that Privatis has any interest in this case or is a necessary party to this case.  Even if it were, though, the defect can be cured by joining Privatis, rather than dismissing this case entirely.

## FACTS

### A.    The Formation of Controlbox.com and its Business

In 2010, Plaintiff's majority member and director, Steven McAuley ("McAuley") began development of a system which would allow used car sellers to list vehicles online for sale without providing their real phone numbers and email addresses.  McAuley hired a technology developer named Joseph Cohen to begin developing a "proof of concept" for this secure messaging system.  Cohen, in turn, hired various contract developers, all of which were paid for by McAuley.  In approximately September 2010, when it became clear that the secure messaging system concept could work, McAuley formed Plaintiff Controlbox.com as a technology start-up company to develop the secure messaging software and systems.  (Ex. 1, ¶¶ 7-17).

In middle to late 2010, Controlbox.com began negotiating with Autotrader.com—an online marketplace for the sale and purchase of new and used motor vehicles— to build a secure messaging product for its private seller site users.  McAuley personally funded the development of this concept, the

development of the technology, and the subsequent and ongoing formation and growth of Controlbox.com.  (Ex. 1, ¶¶ 18-19).

**B.**     <u>**Nichols is not an Owner of Controlbox.com or its Technology**</u>

Contrary to his claims, Defendant Nichols is not a member of Controlbox.com and he did not provide any equity capital to the company. Defendant Nichols' only involvement with Controlbox.com's business was initial discussions regarding the benefits of, and possible applications for, the secure messaging system developed by Controlbox.com.  McAuley became acquainted with Nichols in approximately 2009 to 2010 when both McAuley and Nichols were providing consulting work to an unrelated company named Mota Motors. Mota Motors offered, among other things, online listings and products and services designed for private sellers and buyers of used cars. During their time consulting for Mota Motors, McAuley and Nichols—and others—discussed ideas for improving the buying and selling experience for private seller used car transactions online.  One of the ideas that was discussed was the secure messaging system. (Ex. 1, ¶¶ 7-21).

However, McAuley and Nichols have never been in business together and McAuley never agreed that Nichols was a 50% member of Controlbox.com, as Nichols has claimed.  Nichols is also not an owner of any of Controlbox.com's technology or intellectual property.  The technology developed by Controlbox.com

3

was developed exclusively by Cohen and his team on behalf of Controlbox.com. Nichols had no participation in the development of the actual technology. Further, the formation of Controlbox.com was not a secret to Nichols. Nichols knew that McAuley had formed this company to develop and to pursue the secure messaging concept and that Nichols was not an investor in or member of the company. (Ex. 1, ¶¶ 13-16; 21).

Despite his lack of participation in forming Controlbox.com and in developing its technology, McAuley was willing to consider various possibilities and structures for Nichols' ongoing involvement with the company, including as an employee of the company. Nichols, however, demanded 50% of any interest of any business venture that was created from the secure messaging project, plus 50% of any other venture McAuley might become involved with in the future. Nichols also demanded a $13,000 base monthly salary before Controlbox.com even had any long term contracts, revenue, or outside financing. Because of Nichols' unreasonable demands and other factors, he never became a member or employee of Controlbox.com. (Ex. 1, ¶¶ 22-24).

## C.    Defendants Interfere with Plaintiff's Attempts to Obtain Financing

In late 2010, Controlbox.com secured a term sheet for a $750,000 investment in Controlbox.com from Detroit Venture Partners ("DVP"), a new venture capitalist firm based in Detroit, Michigan. On January 18, 2011,

4

Defendant Nichols sent to Controlbox.com's address in Lake Orion, Michigan, a letter in which Nichols falsely claimed ownership of the ideas, inventions, technology and intellectual property associated with Controlbox.com, and alleged an ownership interest in Controlbox.com. Shortly thereafter, Defendants began an intentional process of interfering in Plaintiff's business contracts and expectancies and misrepresenting to third parties Nichols' interests in Controlbox.com and its business and intellectual property. (Ex. 1, ¶¶ 25-27).

On or around February 2, 2011, Nichols contacted DVP in Detroit and interfered with the planned investment by DVP in Controlbox.com by falsely claiming an interest in Controlbox.com and its business and technology. Nichols stated to DVP that if his demands were not met he would sue Plaintiff and would start a competing venture, presumably through Defendant Nixco. (Ex. 1, ¶ 28-29).

On or around February 5, 2011, Nichols talked with one of the partners of DVP and stated, among other things, that he is a 50% owner of Controlbox.com, that the secure messaging system was his property, and that he had started his own company as a direct competitor to Controlbox.com Defendants knew of Plaintiff's expectancy in the substantial investment from DVP and intentionally interfered with this investment in an effort to force Plaintiff to concede to Defendants' unreasonable demands. (Ex. 1, ¶¶ 28-31).

5

DVP and McAuley worked diligently to try to resolve Defendants' demands, but were unsuccessful.  As a result, on February 12, 2011, DVP advised Plaintiff that it could not proceed with $750,000 investment "under the current conditions." DVP explained that they wished to continue to work with McAuley and Controlbox.com, but that the threats from Defendants would have to be resolved before they could proceed further.  DVP advised McAuley, "As soon as you can get a full release from [Nichols] we would love to move full-steam ahead."  DVP's CEO and managing partner also stated to McAuley, "I remain completely excited about ControlBox.  Let's keep in close touch and please let me know if I can help in any way.  Hopefully, the Mike thing gets resolved quickly and we can proceed with building a great company together."  (Ex. 1, ¶ 32-35).

Over the next several weeks, Plaintiff and its attorneys worked to resolve Nichols' unreasonable demands but were unable to reach a resolution. Accordingly, Plaintiff was unable to move forward with DVP.  (Ex. 1, ¶ 36).

Controlbox.com went on to build a successful pilot program with Autotrader.com and secured a long term national agreement for the provision of products and services to Autotrader.com.   In January, 2012, Controlbox.com secured a term sheet for a $1.1 million investment from Fraser McCombs Capital, LLC ("Fraser McCombs"), a venture capital firm in Boulder, Colorado.  (Ex. 1, ¶¶ 38-39).

6

Controlbox.com was in the final week of closing on that investment—with an excess of $40,000 of incurred legal fees—when Nichols contacted the venture capital firm and made the same false and outlandish claims about his interests in Controlbox.com that he had made to DVP. Specifically, on or about March 15, 2012, Nichols contacted Fraser McCombs and claimed, among other things, that he was a partner with McAuley and that he was an equity owner in Controlbox.com. (Ex. 1, ¶¶ 40-41).

Defendants again knew of Plaintiff's expectancy in the substantial investment from Fraser McCombs and intentionally interfered with this investment. Defendants' communications caused Fraser McCombs to withdraw its original term sheet and offer. Over the next several weeks, Plaintiff negotiated with Fraser McCombs for a new term sheet for investment. However, because of Nichols' interference, Plaintiff was unable to complete the deal, leaving Controlbox.com without the investment and with over $40,000 of legal fees. (Ex. 1, ¶¶ 42-44).

**D.   The Formation of Privatis Technology Corporation**

In early 2013, McAuley formed a Canadian corporation, Privatis Technology Corporation ("Privatis"). Controlbox.com sold most of its assets to Privatis. Controlbox.com, however, is an existing Michigan limited liability company in good standing with the State of Michigan. (Ex. 2). Controlbox.com

7

still has assets, including a significant receivable owed from Privatis for the sale of assets. Controlbox.com also has not dissolved, which, pursuant to its operating agreement, can occur only upon approval of its members. (Ex. 3). Controlbox.com is the real party in interest as, at all relevant times, it was the owner of the technology and business ideas at issue and was the party that had contracted for the venture capital funding discussed above. Privatis was not in existence at the time of Nichols' tortious conduct discussed above and is not the successor in interest to Controlbox.com's claims in this suit. (Ex. 1, ¶¶ 50-53).

On October 23, 2013, Nichols sued McAuley and Privatis in Vancouver, British Columbia, again claiming ownership of the secure messaging system and related business. (Ex. 4). While McAuley and Privatis are defending that action, they and their attorneys in British Columbia determined that, under British Columbia law, the claims in this case were not acquired by Privatis and that the claims still belong to Controlbox.com. (Ex. 1). Accordingly, on March 12, 2014, Controlbox.com brought these claims in its own name here in its home venue.

## ARGUMENT

### A.    The Eastern District of Michigan is a Proper Venue

Section 1391(b)(2) provides that a lawsuit may be brought in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." Venue may be proper in more than one district. *See Smith v. Caruso*,

8

2008 WL 1995069 at *2 n.1 (E.D. Mich., May 6, 2008) ("[A]lthough most of the events took place in the Western District, it appears that venue would be proper in either the Eastern or Western District.") (Ex. 5).   Venue in one district may be proper even if another district has a closer connection to the claims because section 1391(b)(2) only requires that a substantial part of the events or omissions giving rise to the claims occur in this district.  *Steen v. Murray*, 919 F. Supp. 2d 993, 996 (D. Iowa 2013).   The question is not which district is the best venue, or which venue has the most significant connection to the claim.   The question is whether the district chosen by the plaintiff has a substantial connection to the claim, even if other forums have greater contact.  *Johns v. Newsmax Media, Inc*., 887 F. Supp. 2d 90, 96 (D.D.C. 2012).  Venue is proper if the activities that transpired in the forum district were not insubstantial in relation to the totality of the events.  *Gonzalez v. Holder*, 763 F. Supp. 2d 145, 153 (D.D.C. 2011).   The inquiry into the substantiality requirement is more qualitative than quantitative.  *See Cold Spring Harbor Lab. V. Ropes & Gray, LLP*, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011).

The requirements of section 1391(b)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.  *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc*., 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003) (citing cases).  *See Vermont Castings,*

9

*Inc v. Evans Products Co., Grossman's Division*, 510 F. Supp. 940, 945-46 (D. Vt. 1981) (finding that principal events giving rise to claim were telephone and mail communications directed to individual in Vermont).

Here, Plaintiff's case arises from communications published to venture capitalists in two states, Michigan and Colorado, which resulted in the loss of investment in Plaintiff by those venture capitalists. Clearly, the states with the most connection to this case are Michigan and Colorado, and a substantial part of the events giving rise to the case occurred in Michigan. Defendants sent communications to both Plaintiff (in Lake Orion) and DVP (in Detroit) in which they made false statements regarding Defendants' ownership in Plaintiff and its business, with the intent of interfering with a proposed investment to occur in this district between DPV and Plaintiff. Under these circumstances, a substantial part of the events giving rise to this case occurred in the Eastern District of Michigan. See *Wachtel v. Storm*, 796 F. Supp. 114, 116 (S.D.N.Y. 1992) (Venue proper in Southern District of New York where allegedly defamatory letters were mailed to the plaintiff and published to third parties in that district).

Plaintiff's complaint contains two causes of action: (1) injurious falsehood and (2) tortious interference. An injurious falsehood claim is in the nature of a defamation claim. *See Felton v. Saylor-Beall Mfg. Co.*, 1999 WL 33435365 at *3 (Mich. App. Oct. 5, 1999) ("[T]he tort of injurious falsehood is similar to

10

defamation[.]") (Ex. 6); *Knollenberg v. Ramirez*, 127 Mich. App. 345, 353 (1983) ("[T]he torts of injurious falsehood and defamation may overlap."). It is well settled that, in a defamation case, the situs of the material events is where the defamatory statements are published. *Mcintosh v. E-backgroundchecks.com, Inc.*, 2013 WL 954281 at *3 (E.D. Ky. March 11, 2013) (Ex. 7). As the Seventh Circuit has explained:

> The tort of defamation would therefore occur in the state or states in which the victim loses personal or as here professional transactions or transactional opportunities because of the impairment of his reputation brought about by the defamatory statement. Ordinarily this will be the state in which the statement was published and thus disseminated to potential transactors with the victim of the defamation.

*Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir. 1994).

Given that Defendant's injuriously false statements were published in Michigan (and elsewhere), and led to damages in Michigan, a substantial portion of the events giving rise to this claim occurred in this District. In *Cummings v. Western Trial Lawyers Ass'n*, 133 F. Supp. 2d 1144 (D. Ariz. 2001), for example, the court held that a substantial part of a defamation claim occurred in the district to which defamatory communications were sent:

> Again, a substantial part of the events giving rise to Plaintiff's defamation claim against Bragg clearly occurred within Arizona. Bragg directed approximately four letters into Arizona which at least partially caused Plaintiff's defamation injury.

11

*Id*. at 1150. Similarly, in *Klauder and Nunno Enterprises, Inc., v. Hereford Associates, Inc*., 723 F. Supp 336 (E.D. Pa. 1989), the court found that the contacts most critical to a defamation action occurred in the district where defamatory material was published. *Id*. at 342.

The situs of Plaintiff's tortious interference claim is also in Michigan (and Colorado). "Courts usually find the situs of the injury, in tortious interference actions, is where the company 'lost business[.]'" *United Mobile Tech., LLC v. Pegaso PCS, S.A. de C.V.*, 509 Fed. Appx. 48, 50 (2d Cir. 2013). Controlbox.com is a Michigan company and it lost business from another Michigan company as a result of Defendants' tortious interference. Under these facts, a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Michigan, and this Court is an appropriate venue.

## B.    This Case Should not be Transferred

Defendant's motion based on forum non conveniens is misplaced as that doctrine does not allow for the transfer of cases to a different federal district. "Upon enactment of 28 U.S.C. § 1404(a), the doctrine of *forum non conveniens* is no longer an independent basis for transferring a case to an alternative forum in the United States." *Central Transport Intern., Inc. v. Alcoa, Inc*., 2006 WL 2844171 at *1 n.1 (E.D. Mich. Sept. 29, 2006) (Ex. 8). *See American Dredging Co v. Miller*,

12

510 U.S. 443, 448 n.2 (1994) ("[T]he federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad.").

But, even if considered as a motion to transfer under section 1404, Defendant's motion must be denied, as Defendant has not presented any facts to show that Missouri is the more convenient venue. Defendant bears the burden of demonstrating that fairness and practicality strongly favor the forum to which transfer is sought. *Audi AG and Volkswagon of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004). Defendant must make this showing by a preponderance of the evidence. *Id.* "It is clear, of course, that without more than a defendant's mere preference for a particular forum, the motion to transfer must be denied." *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990). Here, Nichols has made no showing other than his mere preference. "Defendant has supplied no argument in support of its motion to transfer. Accordingly, it has not met its substantial burden of demonstrating a strong balance of convenience in its favor." *Id.* at 377-78.

## 1.    Michigan is Controlbox.com's Home Forum

The plaintiff's choice of forum is entitled to "substantial deference," *id.*, and Defendant must present "strong evidence that a change of venue is appropriate." *Rutherford v. Goodyear Tire and Rubber Co.*, 943 F. Supp. 789, 791 (W.D. Ky. 1996), citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). As another court

has explained, "deference is to be given to plaintiff's choice of forum and transfer should be ordered only if the balance of convenience weighs strongly in favor of the change of forum." *Kroll v. Lieberman*, 244 F. Supp. 2d 100, 102-03 (E.D.N.Y. 2003).

Here, Michigan is Plaintiff's home state and is entitled to substantial deference. A limited liability company's state of organization is its "home forum" and its choice to litigate in that forum is "entitled to paramount consideration." *Intellectual Ventures I v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012). *See AIP Acquisition LLC v. iBasis, Inc.*, 2012 WL 5199118 at *3 (D. Del. Oct. 19, 2012) ("The court thus accords AIP's decision to litigate in Delaware, its state of organization, heightened deference[.]") (Ex. 9); *R&L Merchandise, LLC v. Alex and Ani, LLC*, 2013 WL 2434988 at *2 (M.D. Tenn. June 4, 2013) ("Plaintiff is a Tennessee limited liability company and brought its action here, in its home forum.") (Ex. 10).

## 2.    The Convenience of Witnesses does not Support Transfer

One of the most important factors in determining whether to grant a motion to change venue is the convenience of witnesses. *Audi AG, supra* at 750. "The moving party should generally provide each witnesses name and the subject matter of the witness's anticipated testimony." *Id.* A party seeking a transfer of venue under § 1404(a) must clearly specify the key witnesses to be called and must make

14

a general statement of what their testimony will cover. *LaCroix v. American Horse Show Ass'n.*, 853 F. Supp. 992, 1001 (N.D. Ohio 1994). Here, Defendant has identified no witnesses and made no showing that Missouri would be more convenient to those witnesses.

A fundamental principle guiding the venue analysis is that litigation should proceed in the place where the case finds a center of gravity. *Audi AG, supra* at 751. Here, this case arises from false statements directed to third parties in Michigan and Colorado which induced them to cancel substantial investments with the Plaintiff. Accordingly, the most important witnesses—those who received Defendants' false statements and consequently made decisions not to invest with Plaintiff—are located in Michigan and Colorado. The convenience of the witnesses favors litigation in one of the states. Given that Michigan is Plaintiff's home state and Plaintiff is "strongly connected" to Michigan, the balancing inquiry does not support transferring this case to Missouri. *Id.* at 752.

### 3.    <u>Access to Sources of Proof does not Support Transfer</u>

Here, this cases arises from false statements communicated to investors located in Michigan and Colorado. The most relevant sources of proof will be witnesses from those states. While the location of physical evidence ought to be given weight in the analysis, the location of documentary evidence is only a minor consideration. *Id.* Therefore, this factor does not support transfer to Missouri.

15

4.   **The Availability of Process to Compel**
     **Attendance of Unwilling Witnesses**

Nichols has not identified any unwilling witnesses. A general possibility that there may unwilling witnesses does not favor a transfer. *Park West Galleries, supra*; *Thomas v. Home Depot, USA, Inc.*, 131 F. Supp. 2d 934, 940 (E.D. Mich. 2001).

5.   **The Cost of Obtaining Willing Witnesses**

Again, Nichols has presented no evidence regarding what witnesses would testify or what the cost would be. Therefore, this factor does not support a transfer, especially given this case's connection to Michigan.

6.   **Other Practical Difficulties**

Nichols has not presented evidence of any other practical difficulties, nor has he explained how those difficulties would be alleviated by transfer of this case to Missouri, where neither DVP nor Fraser McComb is located.

Based on the foregoing, Defendant clearly has not presented "strong evidence that a change of venue is appropriate." *Rutherford.*, 943 F. Supp. at 791. Indeed, Defendant has not presented any evidence other than his bare claim that Missouri is more convenient. This bare allegation is insufficient to support a transfer. *Evans Tempcon, Inc.*, 778 F. Supp. at 377.

16

C.    __Plaintiff's Complaint States Claims Upon Which Relief may be Granted__

In ruling on Defendant's motion, Plaintiff's complaint is to be construed "in the light most favorable to the plaintiff, accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Plaintiff's complaint should not be dismissed unless it does "not have a 'reasonably founded hope'" of making its case. *Parker v. Federal Exp. Corp.*, 2010 WL 2510984 at *2 (E.D. Mich. Jun. 17, 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) ("*Twombly*"). (Ex. 11).

Under Rule 8(a)(2), Plaintiff's Complaint need only contain a "short and plain statement of the claim showing that [it] is entitled to relief."  The Supreme Court's decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), did not signal a switch to fact-pleading in the federal courts.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (quoting *Twombly* at 555).  Nor did these cases "purport to place on a plaintiff … a summary judgment standard at the pleading stage." *In re Packaged Ice Antitrust Litig.*, 723 F.Supp.2d 987, 1005 (E.D. Mich. 2010) (citing *In re Flat Panel Antitrust Litig.*, 599 F.Supp.2d 1179, 1184 (N.D.Cal.2009)).  Instead, these

17

cases only require sufficient factual allegations to "state a plausible claim for relief." *Iqbal, supra* at 1950.

The Supreme Court's "plausibility" standard "does not require [courts] to flyspeck complaints looking for any gap in the facts." *Lacey v. Maricopa County*, 693 F.3d 896, 924 (9th Cir. 2012). "The court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007). The factual allegations need only be enough to raise the right to relief above the speculative level. *Twombly, supra* at 555. If Plaintiff's factual allegations state a plausible claim for relief, this Court must let the litigation proceed. *Pagliara v. Johnston Barton Proctor & Rose, LLP*, 708 F.3d 813, 819 (6th Cir. 2013). Further, a Plaintiff "cannot be expected to know or allege all details [of the claim] at this early stage of the case; [and] neither *Twombly* nor any case decided under that holding suggests otherwise." *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009). (Ex. 12).

## 1.     Plaintiff has Stated a Claim for Injurious Falsehood

"Injurious falsehood cases typically concern derogatory or disparaging communications regarding the title to property or its quality." *Knollenberg*, 127 Mich. App. at 350. The "gist of the tort is some interference with an economically advantageous relationship which results in pecuniary loss rather than an action that

18

directly affects property." *Id.* at 350-51.   The elements of a claim for injurious falsehood are: (1) that the defendant published a false statement to a third party knowing that statement to be false (or acting in disregard for its truth or falsity); (2) that the defendant knew, or should have known, that this false publication would likely result in pecuniary loss or in harm to interests of the plaintiff having a pecuniary value, and (3) that the plaintiff suffered special damages as a result. *Neshewat v. Salem*, 173 F.3d 357, 364 (6th Cir. 1999) (applying Michigan law).

In *Kollenberg*, a doctor told a patient that his severe reaction to a prescription drug overdose resulted from the pharmacist's error in filling his prescription. As a result of this communication, the patient sued the pharmacist. The pharmacist subsequently sued the doctor for injurious falsehood based on his statement to the patient.   In holding that the plaintiff stated a claim for injurious falsehood, the court held:

> Plaintiff alleged that defendant published a false statement to Mr. Semmel knowing that statement to be false.  Plaintiff also alleged that defendant knew, or should have known, that this false publication would likely result in an action brought against plaintiff which would cause plaintiff pecuniary loss.  Furthermore, plaintiff alleged that his special damages, or pecuniary losses, were the costs associated with defendant Mr. Semmel's lawsuit and other economic consequences flowing from that lawsuit.

*Id*. at 352.  Here, Plaintiff alleged that Defendants published false statements to venture capitalists regarding their alleged ownership interest in Controlbox.com and their ownership of the ideas, inventions, technology and intellectual property

19

of Controlbox.com when they knew those statements were false and knew that their statements would lead to pecuniary harm to Plaintiff. These allegations state a claim for injurious falsehood.

Contrary to Nichols' argument, the allegations of the complaint state a plausible claim for injurious falsehood. Defendants told the venture capitalist firms that Nichols was a member of Controlbox.com, when, in fact, he was never a member of Controlbox.com and he knew this was the case. The facts of the complaint show that Controlbox.com was formed solely by McAuley and that Nichols was never a member of that company. (Ex. 1, ¶¶ 12-15, 21). The facts also show that the secure messaging system was developed solely by Controlbox.com and its employees and contractors, and that Nichols had no participation in the development of that technology. (Ex. 1, ¶¶ 11-20). Based on these facts, Plaintiff's allegation that Nichols' claim of ownership of Controlbox.com and its ideas, inventions and technology were false is plausible and states a claim.[1]

Plaintiff also alleged that Defendants knew that their false statements would cause Plaintiff pecuniary loss. Indeed, the complaint alleges that Defendants made

_____

[1] Nichols attaches as an exhibit to his motion an unsigned term sheet for investment, referring to Nichols as a founder of Controlbox.com. However, Nichols does not provide any documentary evidence that Plaintiff or McAuley agreed with this characterization or that Nichols was in fact a founder of Controlbox.com. In any event, this Court may not consider matters outside of the complaint in ruling on Nichols' motion to dismiss for failure to state a claim. *Amini v. Oberline College*, 259 F.3d 493, 502 (6th Cir. 2001).

their statements to hold the investments hostage so that Defendants' demands would be met. (Ex. 1, ¶¶ 31, 40-41).

Finally, the complaint plausibly alleges that Plaintiff suffered pecuniary harm from Defendants' statements; specifically the loss of significant investments and money expended pursuing those investments. The complaint alleges facts showing that the loss of the investment was directly related to Defendants' statements. Both venture capitalist firms acknowledged that their investments were withdrawn because of Defendants' statements. DPV even stated that they would move forward with the investment once Nichols released his claims. (Ex. 1, ¶¶ 33-35). Clearly, these allegations plausibly states a claim for injurious falsehood and the factual allegations are easily enough to raise the right to relief above the speculative level. *Twombly, supra* at 555

### 2.     Plaintiff has Stated a Claim for Tortious Interference

Plaintiff also alleges a plausible claim for tortious interference. The elements of tortious interference with a business expectancy are: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, and (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*,

268 Mich. App. 83, 89-90 (2005). The plaintiff must also allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the business relationship of another. *CMI Int'l., Inc. v. Intermet Int'l. Corp.*, 251 Mich. App. 125, 131 (2002).

Here, Plaintiff has alleged a valid business relationship and expectancy with the venture capitalist firms. (Ex. 1, ¶¶ 30, 39-40). Plaintiff has also alleged knowledge on the part of Defendants of these expectancies. (Ex. 1, ¶¶ 31, 42). Finally, Plaintiff has alleged that Defendants intentionally interfered with these expectancies, causing damage to Plaintiff. (Ex. 1, ¶¶ 31, 42, 45).

Plaintiff's allegations easily state a plausible claim for relief. There is no question that Defendants knew of Plaintiff's expectancies from the venture capitalists, since Defendants directly contacted those firms. Plaintiff also alleges a plausible intentional interference by Defendants where it alleges that Defendants made various demands to Plaintiff and the venture capitalists and threatened to sue if its demands were not met. (Ex. 1, ¶¶ 28-29, 41). Further, there is no question that Defendants' conduct interfered with Plaintiff's expectancies, given that both venture capitalist firms withdrew funding because of Defendants' demands. (Ex. 1, ¶¶ 33, 43).

Finally, Plaintiff's complaint plausibly alleges the elements of wrongful conduct and malice. First, the fact that Defendants' statements were false easily

22

satisfies the wrongful conduct requirement. *See Knollenberg, supra* at 351 ("By its very nature a false statement intentionally made is wrongful") (internal citation omitted). Even if this were not the case, the facts plausibly show Defendants' malice. For purposes of intentional interference with a business expectancy, "malice" is the intentional doing of a wrongful act without justification or excuse. A "wrongful act" is any act which in the ordinary course will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right. *Feldman v. Green*, 138 Mich. App. 360, 370 n.1 (1984). Here, Plaintiff has pled facts which show that Defendants have no right to Controlbox.com or its property, yet they intentionally interfered with Plaintiff's opportunities for investment, causing damage to Plaintiff. This satisfies the malice requirement and Plaintiff has stated a plausible claim for intentional interference with a business expectancy.

**D.    Plaintiff has not Failed to Join a Necessary Party**

Finally, Nichols' motion to dismiss under rule 12(b)(7) for failure to join an indispensable party must be denied as Nichols has not carried his burden in showing that Privatis is a necessary party to this case. "A party is not necessary where it has not claimed an interest in the outcome of an action and complete relief can be ordered in its absence." *Century Business Servs., Inc. v. Bryant,* 69 Fed. Appx. 306, 311 (6th Cir. 2003). Here, Nichols has not shown that Privatis claims

23

an interest in this case, or that complete relief cannot be afforded to Controlbox.com without Privatis.

Rule 12(b)(7) provides that a complaint may be dismissed "for failure to join a party under Rule 19." The Court must examine whether the absent party is required, and whether, in its absence, equity and good conscience require the case to be dismissed. *Dahill Management LLC v. Moore*, 2010 WL 891862 at *1 (E.D. Mich. March 11, 2010). If joinder of the absent party is not necessary, the analysis ends. *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 182 F.R.D. 512, 516 (N.D. Ohio). As the moving party, Nichols bears the burden of demonstrating the necessity of the missing party. *Lewis v. Ceralvo Holdings, LLC*, 2012 WL 32607 at *8 (W.D. Ky. Jan. 6, 2012) (Ex. 13). The moving party may satisfy this burden through the production of affidavits or other relevant extra-pleading evidence. *Id.*

An absent party must be joined under Rule 19(a)(1)(A) if, in that person's absence, the court cannot accord complete relief among exiting parties. *Dahill, supra.* "Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *School Dist. of City of Pontiac v. Sec. of U.S. Dept. of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009). Here, Nichols has not shown that Privatis is a necessary party under Rule 19(a)(1)(A) because he does not address how, in the event of a finding

24

of Defendants' wrongdoing, the Court could not accord Controlbox.com complete relief. *Dahill, supra.* Since Nichols failed to address whether the Court can afford complete relief if Defendants are found liable, Nichols has not shown that Privatis is a necessary party under Rule 19(a)(1)(A). *Id.* at *2.

Nichols also has not carried his burden of showing that Privatis is a necessary party under Rule 19(a)(1)(B). Nichols has not shown that Privatis claims an interest in this action or that Nichols is "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Id.* Nichols' only argument is his unsupported speculation that Privatis could assert successor rights and bring a future action against Defendants for the same claims. But, an absent party is not necessary just because of the "speculative possibility of further litigation between a party and [the] absent party." *Sales v. Marshall*, 873 F.2d 115, 121 (6th Cir. 1989).

In *Iron Workers, supra*, the defendant argued that the possibility of future litigation brought against the defendants by absent parties was sufficient to require joinder. *Id.* at 519. The court rejected this argument because it was speculative;

> First, the defendants give no compelling evidence showing that any of the absent parties either intend to file such suits or have at all an interest in pursuing similar claims against the defendants. Second, even if such a showing were made, the defendants would need to establish that any future suits by [the absent parties] were brought to recover the same damages that the Plaintiff Funds presently seek.

*Id.*

Here, Nichols has provided no evidence that Privatis intends to file suit or has any interest in pursuing similar claims against these Defendants.  Nichols also has not shown how Privatis could assert the same claims against Defendants that are already being brought by Controlbox.com.  If, as Nichols posits, Privatis were Controlbox.com's successor in interest to the claims brought in this suit, the resolution of this suit would be res judicata of Privatis' claims.  *Cohen v. Cohen*, 125 Mich. App. 206, 213 (1983) (res judicata applies where "both actions must involve the same parties or their successors in interest.").

## CONCLUSION

WHEREFORE, for the forgoing reasons, Plaintiff requests that Defendant's Motion to Dismiss be denied.

Respectfully Submitted,

**MANTESE HONIGMAN ROSSMAN AND WILLIAMSON, P.C.**
Attorneys for Plaintiff

By:    /s/ David Hansma_____
Gerard V. Mantese (P34424)
David Hansma (P71056)
1361 E. Big Beaver Road
Troy, MI  48083
(248) 457-9200

Dated:  April 24, 2014

26

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

CONTROLBOX.COM, LLC.,
a Michigan limited liability company,

      Case no. 14-cv-11069

      Plaintiff,

      Hon. Paul D. Borman

vs.

      Magistrate Judge R. Steven Whalen

MICHAEL NICHOLS, an individual, and
NIXCO, LLC, a Missouri limited liability company,
jointly and severally,

      Defendants,

| | |
|---|---|
| **MANTESE HONIGMAN ROSSMAN AND WILLIAMSON, P.C.**<br>Gerard V. Mantese (P34424)<br>gmantese@manteselaw.com<br>David Hansma (P71056)<br>dhansma@manteselaw.com<br>1361 E. Big Beaver Road<br>Troy, MI 48083<br>Telephone: (248) 457-9200<br>Facsimile: (248) 457-9201<br>www.manteselaw.com<br>*Attorneys for Plaintiff* | Michael Nichols (Pro Se)<br>4303 McPherson Avenue<br>Saint Louis, MO 63108<br>Telephone: (314) 323-5459<br>mike@nixco.net |

## CERTIFICATE OF SERVICE

      I hereby certify that on April 24, 2014, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

          /s/Sherri Sikorski
          Sherri Sikorski
          Mantese Honigman Rossman
          and Williamson, P.C.
          1361 E. Big Beaver Rd.
          Troy, Michigan 48083
          Telephone: (248) 457-9200
          Ssikorski@manteselaw.com